I didn't realize the first one had been submitted, I apologize. My name is Michael Green and I represent the defendant, Appelant Janice Cockett. In looking at our papers, I think it's obvious to your honors that we're asking that this court adopt the recommendation of the magistrate and order the state to either release or retry Ms. Cockett. Part of the magistrate's finding and recommendation was the state, in fact, admitted in their answer that the Bruton issue was, in fact, raised on appeal and that they would then be stopped, the state would then be stopped from denying that. The district court, of course, didn't mention anything about the magistrate's findings or recommendation and, in fact, didn't address it. What the district court went on to say was that the petitioner procedurally defaulted with respect to her confrontation claim and that simply, with all due respect to that judge, just frankly makes no sense. This was an ambush. Where was it raised? Well, you know, I've been doing this 33 years and it's really hard to figure out what happened here. Well. What I can say is I can only do it by inference because the trial of appellate counsel, it looked to me like simply argued the hearsay, the ambush that took place in the courtroom and basically said when the court gave a limiting instruction that the evidence of the girlfriend, Meneshima, was only offered to impeach that of her boyfriend, Maki'ila, and for that limited purpose and then allowed the government to bring in, and that's the prosecutor, to bring in four corroborating witnesses and then argue with a substantive proof. Limiting instruction was really a fiction and it made no sense. But for that evidence, there is no case. There is no case against Janice Cockett. There's nothing. But when the case goes on direct appeal, what we have are certain issues that are raised. One had to do with the luminal testing and whether that was there. The other one was the hearsay argument. But the third one is also kind of interesting because what they argued was they were even precluded from cross-examining and arguing the motive or intent of Meneshima as to why she testified. Her father allegedly was an organized crime figure and what benefits he would receive from her testimony. But then we have an opinion, which is a slip sheet opinion, from our Supreme Court. No one knows basically their reasons. But on the Rule 40 petition, where we raise confrontation for the first time, what we wind up with is that there was no ineffective assistance of counsel by appellate counsel. Well, if there was no ineffective assistance of counsel and he doesn't raise the confrontation, they must have considered it. That's the best we can do. But the state in their answer says that it was for — because under the rule, there's a page limit and counsel could have made a strategic decision that that was the weakest of the issues and that his other decisions, the other issues were better. Well, during the Rule 40 petition hearing, they both admitted they missed it. In fact, the appellate counsel said that argument was better than at least one that he had raised. But you know, I'm not a bleeding heart. I've been doing this 33 years. And when we talk about someone being on trial, even if it wasn't someone that was looking at life with the possibility, when we talk about the very essence of confronting your accuser, the very essence of that, I can't imagine when he raises hearsay, which kind of goes hand in glove with confrontation. Well, you know, there are a bazillion hearsay objections in most trials all the time that don't raise confrontation clause issues. That is absolutely true. And Bruton did involve a joint trial where the issue was the testimony of a co-defendant, neither of which is the case here. So arguably, it even makes a great deal of sense not to have wasted paper on a confrontation clause challenge because it wasn't going to go anywhere. Now, both counsels, as I said, admit they never saw the issue. But if we look at what happened here, who was the accuser? The accuser is Maka'ila ostensibly because when he's presented, he's presented as a witness who denied even knowing Cockett. We then bring in his girlfriend, and basically the reason she's presented is to show the accomplice. If Maka'ila in fact lied when he said, I don't even know Cockett, he's offered ostensibly as her accomplice in this crime. We then have him being impeached, that the testimony of the accomplice, not only to show the accomplice had something to do with this Maka'ila, but brings in as substantive proof the evidence of my client's guilt. That's the only way they get it in. But the limiting instruction is a fiction because it was a setup. They had the cast of characters waiting backstage. If it's offered only to impeach Maka'ila, why in the world do they bring in four witnesses to say and corroborate what Mnishina says? It was clearly offered as substantive proof. I mean, truly, as I said, this was an ambush. I mean, the way it went in as far as the hearsay being offered just simply to impeach her and then offered as proof of the guilt of the defendant is one thing. But when they both admit, trial and appellate counsel, they never saw the Bruton issue. But then we have the state admitting that Bruton was considered in their answering papers for the habeas corpus, and that's what the magistrate actually relied on. I mean, when we look at the testimony of appellate counsel at the Rule 40 petition, he says there was nothing left. If the hearsay doesn't come in, there is nothing. And then, of course, not to afford trial counsel the ability to cross-examine Mnishina at all as to her motive. It was done. It was done. The jury could have mailed this one in. But the issue as to confrontation, as I said, when they say that ineffective assistance of counsel was waived by appellate counsel, as well as confrontation, and then they say our Supreme Court says, but there was no ineffective assistance of counsel in the appellate counsel, those two don't fit. One does not follow the other. If appellate counsel is not ineffective, but waived the issue of confrontation and ineffectiveness because it wasn't raised, it just doesn't work. One thing has to be true, and one thing has to be false. It's not possible for them to just simply flow one after the other. Well, on balance, in a typical situation, isn't it necessary that the hearsay argument be stronger than the confrontational argument? I think that... As a proposition of law standing alone. Well, perhaps. But the problem is... And once you get to the point where it's a constitutional matter, the hearsay is received under well-established rules of state law, under well-established rules of evidence, then the confrontation issue becomes very weak. Isn't that true? I don't agree with that, respectfully. When you have, as a general proposition, when you have someone objecting to hearsay, it happens all the time. And lawyers don't intentionally or necessarily go ahead and elicit testimony or evidence that violates our hearsay rule. This was no accident. We have a limiting instruction from the court that this is only offered for the limited purpose of impeaching Maka'ila, and then the cast of characters come in, and it's argued as substantive proof. The hearsay was argued substantively to convict Cockett. But that's a separate issue. Well, it is a separate issue. And that goes to another claim you have here. But there is nothing in this record to suggest that this prosecutor called this witness knowing that the witness would testify the way he did after his privilege against self-incrimination was removed. Let me say as a general proposition, as lawyers, when we look, and I know the prosecutor, and I like him, but that's not relevant one way or the other, but when we look at this case, we have a prosecutor who puts on a witness who has initially no immunity, and he takes the fifth. And then he's given transactional immunity. If the prosecutor was not expecting this, he doesn't have Minashima prepared. He doesn't have four other witnesses prepared to say that what Minashima said has to be true. You have never asserted that before today. Well, I mean, the way it's asserted... And that would be if you had a prosecutor who simply called this witness knowing that the witness was going to testify the way he did solely for the purpose of putting in impeachment. That would be a different case from what we have here today. I could not, in good faith, as an officer of the court, come in and accuse a prosecutor of that other than being able just to look at what the facts were. And what we have is, we have a record that if we take away the hearsay of Maka'ila, if we take that away, we don't have a crime. We have no crime. We have, ostensibly, a limiting instruction that says when Minashima testifies now, ladies and gentlemen of the jury, you're only to consider it as impeachment of the accomplice. And I know, obviously, that's very clear. But then what we have is, we have the hearsay argued as substantive proof, and she got wasted. And then when we have both lawyers at the trial level and appellate level saying, listen, I came in here with an argument, and I hear you folks, and respectfully, and I know how you feel about potentially this Bruton issue. But what we then have is both lawyers saying, we never thought of it, we never argued it, and one saying, you know what, it's actually appellate counsel, it's actually a better argument than one of them that I made. You said that, where does, in the record, does the appellate counsel say he never thought of it? Well, he says it in his trial testimony at the Rule 40, what we have in our ruling papers. I mean, I just don't, I didn't understand him to say he never thought of it. I understood him to say he thought the real problem was the Root problem, and that he simply didn't pursue the Bruton argument. He said, what he said was that the Bruton issue was a better argument than one that he had made. Eventually, he said, upon reflection, maybe it's a better argument than the Luminal. But at the time, he said he spent hundreds of hours on this, he had a page limit, and he decided to go with what he thought at the time was the better argument. I guess. But I'm, you have asserted something that I want to be sure, if you're correct, I want to correct my understanding. So if you can point me to a place where he said he missed it, I would like to know it. I would like, what I would like to do respectfully is, I'll be seated, and I have the document, our brief here, but I certainly, obviously, would never say anything to this court or any other court that I did not believe was well-founded in the facts. And I will look for it, because, as I said, he is one of the finest appellate lawyers we have in this state. And I just hope I'm not confusing, and I don't believe I am, my conversation with him in my office, as opposed to what I saw. But I, you know, I, I don't remember every word of this transcript, but I would just like to know where it, where it is that he said he missed it. Okay. I will, I will make every effort to try to find it. Thank you very much. You want to save the rest of your time? I'll, I'll be happy to. Or the rest of your time that you're out of? I, I probably am over already, but I. You, you are. Thank you. All right, now we'll hear from, this is what you see. Good morning. Alexa Fujise for the respondents in this case. First of all, I'd like to say that my recollection is the same as yours, Judge. As I looked at the transcript of Peter Resser's testimony at the post-conviction relief hearing for the state court, I understood him to say that he did see the Bruton issue, was looking at the page limitations, and the fact that he was already far over the page limitation for his brief, he made some choices. He candidly said that he couldn't say at that moment what he would have done. And I submit that that was in hindsight, he wasn't sure even what he would have done, but perhaps the, this issue was better than the luminol issue that he did raise, but that he did in fact recognize that there was a Bruton problem. But I would like to move on at this point to what I think is the initial issue, which is whether the petitioner procedurally defaulted on these claims. And we would submit that under, when you look at this record, it's pretty clear that she has. Now, petitioner argues this morning that the respondents have admitted, or there's an admission that she did present the claims in her direct appeal. And we would submit that in our objections to the magistrate's report and recommendation, and on our brief before this court, that we explain that we did not admit that the issue was previously ruled upon or raised for this reason, that I think what the magistrate picked up on was the language that was contained in the state's answer to the post-conviction relief petition, to the Rule 40 petition. And I'm not going to say whether it could have been, maybe it could have been phrased better, but as we explained in our papers, what our position there was was that Bruton did not apply, that the hearsay objections or the hearsay arguments that were part and parcel of the argument being raised at the Rule 40 point in time were the issues that were previously ruled upon by the State Supreme Court. I think, more importantly, if you look at the record, excuse me. I'm, when you're talking about a Rule 40 procedure, you're talking about something in state court. Yes, I'm sorry. It's the answer in the district court that the magistrate picked up on, not an answer in the Rule 40, am I right? Yes and no. Let me explain. The answer before the district court below, in the habeas 2254 petition answer, we quoted what was said in the state post-conviction relief answer. As part of your answer? Yes. Well, did it become the answer in the district court? No, no. We quoted it to illustrate what the proceedings were as a description of what the proceedings were at the state court level. That our position was that, on 2254 petition, was that this issue had not been raised at trial or in the direct appeal. I'm sorry, did I answer your question? Well, I know you made a separate denial of that it was raised. Yes. But you also had what you say is the quotation from the prior answer. Yes. Which is iffy. Right? Okay, I'll say it's iffy if you take it out of context. But our quotation of it, as I understand it, our quotation of the state court answer was a matter of a description of the previous proceedings, as opposed to a statement of our position in federal court. And in no event did the state court treat it as an admission that the issue had been raised? The circuit court, I mean, I'm sorry, the district court did not. That's correct. No, I'm talking about the state court. When you got into the rule 40, the state court at that level, on that occasion, did not take it as an admission that these issues had been raised. That is correct. I'm sorry, I did not understand you. That's correct. Okay. Did not. And on the appeal from the state rule 40, neither did the state supreme court. In fact, the state supreme court found that it had been waived. So you claim there's no new admission made in the answer that was filed in the district court? That's correct. Our position is that the magistrate misunderstood our answer. All right. Yes. But more importantly, I think, is to just look at the record that was submitted to the district court in this case. The rule 40 petition, the briefs on direct appeal and from the decision on the rule 40 show exactly what was raised and what was not raised. And it is clear that the, as petitioner again says this morning, it's clear that they did not raise the federal constitutional claim in their direct appeal. Which caused the waiver in default which the state supreme court recognized in the appeal from the rule 40 in determining that the confrontation claim and the trial in effect of assistance of counsel claim had been waived. And the court in the appeal from the rule 40 did go on to look at the ineffective assistance of counsel on appeal claim and then decided it based on state law. That it did not rise to the level of ineffective assistance of appellate counsel. It paraphrased the state claim, I'm sorry, the state standard and cited to a state case in support of that ruling and reached it on the merits. But we would submit not on the federal standard for ineffective assistance of counsel of appellate counsel. So, given all of that, our position of course is that petitioner has procedurally defaulted. She has not shown cause, has not explained how the level of the representation of the appellate counsel rose to the level of constitutionally ineffective assistance of counsel that would constitute cause. She has not done that. And therefore, as the district court judge found below, there was no reason to reach the issue of prejudice. So we submit that there was no prejudice. Neither has the petitioner shown that there is actual innocence involved in this case. Therefore, there being no exception to causing prejudice, that should be support for the district court's position that the issues that they raised there have been waived and procedurally defaulted. And therefore, there is no need to reach the merits of this case. If there are no further questions, we submit. Okay? Thank you. Mr. Green. I have 30 seconds. Sure. I'm being so patient. First, as far as the procedural default, in Hawaii, there cannot, our Supreme Court does not follow a strict rule on procedural default. Unless the defendant knowingly and understandingly waives it. And she certainly didn't understand the Sixth Amendment, or confrontation, or Bruton, because her lawyers basically never waived it. So in the Fragile case, our Supreme Court doesn't follow it, because they've carved out an exception. That case came down after this, so it can't be relevant on consistent application, can it? Well, I don't know. I argue it because it's in our moving papers, and I think if we don't have a firm, fast rule in Hawaii, I would ask the court respectfully not to impose one here. The only other thing I found, to try to answer your question, Your Honor, is on page 32 of the brief, it's not specific. But what he says is, Esser acknowledged that he did not raise Bruton, or Douglas, or Confrontation Clause issues. And that the Confrontation issue was a stronger issue than at least one of the issues he had raised, and that's at 253 to 255. Now, obviously, with all due respect to him, to admit that, to admit you're ineffective, is not something I would expect lawyers to be jumping through hoops to do. But clearly, it seems to me, if there is a constitutional issue like Sixth Amendment, and he chooses a different issue, and says, actually, the other one was perhaps stronger than this, I think it's not an unfair inference. And that's my argument. Okay, counsel, thanks for the argument. No matter, just argue will be submitted.
judges: Leavy, Rymer, Tg Nelson